### OLLIE LINDLEY v. THE STATE.

#### No. 120.    Decided December 22, 1909.

**Local Option—Sale—Sufficiency of the Evidence.**

Upon trial for a violation of the local option law, where it appeared that the sale of the alleged whisky was made through the intervention of others, and the events as they occurred relating to such sale did not all transpire in the presence of the defendant, there was no error in admitting the testimony of these parties to connect the defendant with the transaction so as to show knowledge, intent and purpose on the part of the defendant in making the sale, although some of the incidents connected therewith happened out of his sight and hearing.

Appeal from the County Court of Titus. Tried below before the Hon. W. E. Riddle.

Appeal from a conviction of a violation of the local option law; penalty, a fine of $25 and thirty days confinement in the county jail.

The opinion states the case.

*Rolston & Ward,* for appellant.—Cited Smith v. State, 52 Texas Crim. Rep., 507, 107 S. W. Rep., 819; Holmes v. State, 52 Texas Crim. Rep., 344, 106 S. W. Rep., 1160.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—This was a prosecution instituted by information in the County Court of Titus County charging appellant with the sale of intoxicating liquors therein in violation of law. At a trial had on December 8, 1908, he was found guilty as charged and his punishment assessed at a fine of $25 and thirty days confine-

ment in the county jail. The facts are somewhat singular and appellant's guilt depends on a sale made through the intervention of others. Allen, to whom the liquor is charged to have been sold testified in substance that on the 7th of March, 1908, he went to George Crawford and asked him if he knew whether appellant had any whisky, who replied that he did not know, but would find out; that later he went to Crawford's barber shop and gave him $1.50 with which to buy a quart of whisky from Lindley; that Crawford thereupon went off towards the barber shop and that a few minutes later John Ward, a negro barber, who was working in appellant's barber shop, brought and delivered the whisky to him in a negro pool hall; that later on and after he had got this quart of whisky he saw appellant and asked him if he had any more whisky, and he said he did. The witness Crawford, who was produced, stated that on the day in question he met Allen, who asked him if he knew whether appellant had any whisky, and he replied that he would see; that he went to appellant's shop and asked him if there was anything doing, and he, appellant, said yes; that Allen came to witness's shop shortly after this and gave him $1.50, which he took and went to appellant's shop, where he was at work shaving someone; that he laid the money down on the work stand by the chair he was shaving the man in and went out; that he did not know whether appellant saw him lay the money down or not; that there were several persons in the shop at the time he laid the money on the work stand; that he tried to catch appellant's eye, but didn't think he did, nor did he know whether appellant got the money or what became of it; that Ward, another negro barber, was working in appellant's shop at the time and was in the shop at the time he laid the money on the work stand; that he went back to appellant's shop in about fifteen minutes and met Ward on the outside and asked him to tell appellant that Mr. Allen had asked him to send him, Allen, his package; that Ward said he would do it and went in the shop and a few minutes after this Ward brought the quart bottle of whisky into the pool hall and gave it to Allen. Appellant denied the sale, denied giving Ward any package of whisky to deliver to Allen, denied seeing Crawford in his barber shop on the day in question and denied that he had any whisky in his barber shop on that day and stated that he never did have any whisky for sale.

The testimony of Crawford to the effect that Allen gave him $1.50 with which to buy whisky from appellant was objected to because appellant was not present at the time and could not be bound by the acts and declarations of Crawford, and that such testimony was hearsay, and because there was no proof showing that appellant had authorized said Allen to go to Crawford and give him $1.50 to purchase whisky with, and because there was no evidence showing or

any agreement or understanding in any way between himself and the parties named by which the sale of whisky could be made in the way the State sought to prove such sale. The appellant also objected to the testimony of Crawford to the effect that he took the $1.50 from Allen and went to appellant's shop and laid the money on the stand and afterwards requested Ward to tell appellant that Allen had said send him his package and for the same reasons. He also objected to the proof of the fact that on the day in question Ward did deliver to Allen in the pool hall a quart of whisky. The explanation of the court to the first bill, in effect, recites the grounds upon which it was admitted, and upon which we think it was admissible. It is as follows: "The evidence showed that defendant and witness George Crawford had a conversation prior to the delivery of the one dollar and fifty cents, in which witness Crawford asked defendant if there was anything doing, and defendant said, "Yes," and that after said dollar and fifty cents was laid on the work stand a quart of whisky was delivered to T. E. Allen in pursuance to the request made to John Ward. This testimony, together with the statement by defendant to T. E. Allen later on in the same day that he had some more whisky, sufficiently connects witness George Crawford and defendant and shows an understanding between them such as to make said testimony admissible." In explanation of the second bill with reference to the conversation with Ward the court states that same was admitted with the explanation that "the evidence shows that a few minutes after said conversation took place the said John Ward in pursuance to the request therein made did deliver to T. E. Allen a quart of whisky, and that thereafter on the same day said T. E. Allen asked defendant if he had any more whisky, and the defendant said yes. This testimony, together with other facts and circumstances of this case, sufficiently connects the defendant with witness George Crawford and John Ward and shows understanding between them such as to make this testimony admissible." In explanation of the third bill of exceptions, objecting to the fact that the whisky was brought to Allen by Ward, the court says: "The evidence shows that John Ward was working in the barber shop with defendant, and that he was present at the time George Crawford laid one dollar and fifty cents on the work stand and was likely present at the time George Crawford asked defendant if there was anything doing, meaning thereby if he had any whisky to sell, and that said John Ward in pursuance to said request did deliver a quart of whisky to T. E. Allen and took a drink of it. This testimony, together with the other facts in the case, sufficiently connects defendant with all these parties and shows by circumstances if not otherwise that defendant sent the quart of whisky to T. E. Allen by John Ward, which was a question for the jury, and that there was an understanding between defendant and John Ward, George Crawford and T. E.

Allen, such as to make this testimony admissible." We think these explanations of the trial court, in the light of all the facts, clearly demonstrate that this testimony was admissible. That somebody sold Allen a quart of whisky is not to be denied. He paid the price, he got the goods. Clearly, this sale was not made by Crawford. There is slight evidence that Ward made it. No money had been paid Ward, no negotiations were had with him. He was not shown to have any whisky. He was an employe, merely, of appellant and is not shown to have profited by the transaction. Appellant, if the witnesses are to be believed, did have whisky. His affirmative reply to the question as to whether there was anything doing, the jury would doubtless interpret to mean that a person desiring it, could purchase whisky from him. From his statement to the witness Allen, after this sale, that he had more whisky, the jury would perhaps understand, and were justified in understanding, that he was still able and willing to sell whisky. Where a sale is sought to be made, through the intervention of others, naturally many of the events would occur, and much of the testimony would relate to happenings when the real seller is not present. This does not make the testimony necessarily objectionable if the real seller is so connected with the transaction as to show knowledge, intent and the purpose of making a sale, and his knowledge of the events happening out of his sight and hearing, and his necessary cognizance and knowledge of them. Of course, it is essential for the State to show that he was connected with the sale, received the price and knew what it was for. This issue was submitted to the jury in a clear charge requested by counsel for appellant as follows: "You are instructed that if you believe from the evidence in this case beyond a reasonable doubt that Tom E. Allen gave to Geo. Crawford one dollar and a half in money with which to buy for the said Allen a quart of whisky, and that the said Crawford carried the said dollar and a half to the barber shop of the defendant and laid it on the shelf, and that after that one John Ward went to the barber shop of the defendant and got a quart of whisky and delivered the same to Tom Allen, then you are charged that before you can convict the defendant for the sale of whisky, as charged, you must further believe from the evidence beyond a reasonable doubt that the said defendant got the said money, knowing what it was for, and that he delivered to the said John Ward, for the said Tom Allen, the quart of whisky. The defendant in a criminal case is presumed to be innocent until his guilt is established, and if you fail to believe from the evidence beyond a reasonable doubt that he is guilty, as charged, you will find him not guilty. In order for a jury to find a verdict of not guilty, it is not necessary that they shall believe the defendant is innocent, but a reasonable doubt of his guilt is sufficient, and if you have such reasonable doubt in this case, you will find the defendant not guilty." We think, in view

of all the circumstances, in the light of this admirable charge, that the conviction is sustained by testimony both sufficient and legally admissible.

Finding no error in the proceedings of the court below, the judgment is affirmed.

*Affirmed.*